## IN RE: THE MARRIAGE OF HODIN

Case No. 87-11790 FC 14

Eleventh Judicial Circuit, Dade County

December 10, 1987

## OPINION OF THE COURT

RICHARD YALE FEDER, Circuit Judge.

### *FINAL JUDGMENT*

The above matter came on to be heard for Final Hearing on September 30 and October 29, 1987. The Court had the opportunity to view the demeanor of the parties and witnesses, both while testifying and otherwise throughout the proceedings, to carefully review all evidence, arguments of counsel and memoranda of law submitted post-trial.

The husband and wife seem to want to speak, as the Walrus said to Alice, of "Cabbages and Kings;" i.e., the husband claims a lack of the necessary "cabbage" to keep the wife as a "king," and the wife claims

her husband wants to turn her "king"-ly life style into a "cabbage"-patch.

The Court must determine if the parties life-style, which has been described as that of the "Rich and Famous," was founded on the bedrock of financial ability, or simply of sink-hole od debt about to swallow all. There is no dispute that the parties traveled near and far—and well, nor that they showered each other with lavish gifts and threw parties of gastronomical thrills and astronomical bills. Now that the torrid passion has turned into a horrid gnashing, the recriminations fly at each other as thickly as arrows once rained on Custer. What was once considered "laughable extravagance" becomes "insatiable greed;" what was once "playful betting" on sports becomes "gambling mania."

To separate fact from fiction, the real from the surreal, illusion from delusion, and equitable distribution from inequitable retribution requires the Court to sift and weigh not only the testimony but the subtle nuances of the interstices of the evidence. THe husband is described as a brilliant and successful personal injury lawyer earning huge fees or as an unsuccessful business-getter who luckily won two large fees and, as the result of over-borrowing in the "fat" years, faces insurmountable debts in the "lean" years to come. The wife is similarly depicted as a self-indulgent, successful businesswoman, well able to support herself, or a struggling, sickly student, trying valiantly to better herself to become self-sufficient to make ends meet.

The Court has become cross-eyed, white-haired, with depended facial furrows, as it panned the stream of invectives and accusations to separate the faint, flickering flecks of golden truths out of the muddied waters. Some items are not disputed: Alan Hodin rode in to marry Marilyn Strauss August 22, 1975. Alison Maude had already been born to Marilyn by a prior marriage, but was thereafter adopted by Alan; Max David came along June 18, 1979; thus they are both minor children of this union. The parties have stipulated to joint parental custody with primary physical residence of Alison with Alan and that of Max with Marilyn. (Presumably the pairing is purely coincidental and not alphabetical). Visitation has been agreed upon and will be hereafter detailed. The parties have also agreed that both will do all things necessary to obtain a "Get," or Jewish divorce. There agreement ends and the chasm of disagreement opens gapingly.

## FINDINGS OF FACT

1. The Court has jurisdiction of the subject matter and of the parties and specifically finds that both parties hereto have been residents of Florida for more than six months next preceding the filing of the

Petition and Counter-Petition for Dissolution of marriage. Florida is the "home state" of the children.

2. The Court finds that the parties have agreed on the issues of primary physical residence of their children and their respective visitation rights. In accordance with the parties' prior agreement, which the Court finds to be reasonable and in the best interests of the children, the primary physical residence of Alison Maud shall be with the husband, subject to the shared parental responsibility of the wife and to her liberal rights of visitation. The primary physical residence of Max David shall be with the wife, subject to the shared parental responsibility of the husband and to his liberal rights of visitation.

3. The husband is a practicing attorney and has been successful in the most recent years, as has been shown on the tax returns that have been admitted in evidence. In addition thereto, the Court had the benefit of the testimony of the husband's accountant as to his current expected earnings. The wife, during the latter years of the marriage, became involved in a business which provided generous financial help for the wife during the time that the business was operated, but it no longer exists.

4. During the latter years of marriage of the parties, they enjoyed a very comfortable lifestyle, including private schools for the children, summer camps for the children, trips within and without this country, the driving of luxury cars and many other accoutrements of the allegedly "good life."

5. This enjoyment of the exhilarating, exotic and expensive was financed by deficit spending; i.e., borrowing today on earnings of the future. This was the accustomed norm for the family and the Court sees no need to foist on the parties a style of philosophy of economics different from the one they chose for themselves, though 'Hodinomics' probably has no Ruykeyser Seal of Approval.

6. The husband's last financial affidavit served the 26th day of October, 1987, shows a monthly expenditure for him and his daughter in the amount of $6,094.00.[1] The Wife's Corrected Financial Affidavit, dated the 29th day of September, 1987, omitting items such as costs of automobile insurance and medical insurance for herself, shows a "need" to support herself and the son, Max, in the amount of

---

[1] Husband's total monthly expenditure shown was $10,859.00. To determine what is for the husband alone the sums of $425 "for Beth Am for Max" and $4,350 for "court-ordered temporary support" is subtracted, leaving a balance of $6,094 to fulfill the husband's needs for himself and his daughter.

$8,712.64. This totals over $175,000 annually on an alleged gross income prospectively of $137,000.[2]

7. The wife has enrolled in Dade Community College. After the completion of her course of study there, she desires to pursue a course in Florida International University to obtain a degree in fashion merchandising so as to put herself in a position of obtaining remunerative employment in an amount to be able to contribute to the support of herself. The wife's desires to this end are commendable and her exemplary grades indicate her ability to complete her course of study to a Bachelor's Degree.

8. In March, 1987, the wife received the sum of $56,406.83 as the proceeds from the sale of the marital home, pursuant to a written agreement with the husband, dated January 23, 1987. The wife was represented by counsel in the negotiation and execution of that agreement. The parties further agreed that the husband's one half share of these proceeds would be credited in an award of lump sum alimony. The marital home was the major asset jointly belonging to the parties and the funds derived therefrom was the only source from which the husband could reasonably be expected to pay lump sum alimony. Accordingly, the Court finds that wife is entitled to lump sum alimony in an amount equal to the one half share of the proceeds from the sale of the marital home to which the husband would have been entitled had he not agreed to gives these funds to the wife.

9. During the intact marriage of the parties, the children have enjoyed a high standard including private school, summer camp, extracurricular activities and, in the case of ALISON, a lavish bat mitzvah party. The dissolution of the marriage between the parties should not require the children to suffer.

## CONCLUSIONS

It is therefore Ordered and Adjudged as follows:

1. The marriage of the parties is irretrievably broken and a dissolution is granted.

2. The husband and the wife shall have shared parental responsibility of the minor children. The primary physical residence of ALISON shall be with the husband and the primary physical residence of MAX shall be with the wife.

The husband shall have, and it is the intention of the Court that the

---

[2] Obviously, Financial Affidavit have the same nexus to reality as letters that being "Dear Santa" or "Dear I.R.S."

husband shall avail himself, of the following enumerated visitation with MAX, as same in the best interest of MAX to have continued access and contact with his father, to wit:

The weekend program as is hereinafter enumerated shall be on a four weekend cycle which shall commence the first weekend following the entry hereof.

Every Wednesday the husband to pick up the child from between 4:30 and 5:15 in the afternoon and after the feeding the child dinner to return him at 8:00 in the evening.

The first weekend of the four weekend cycle the husband shall pick up the child between 5:00 and 6:00 in the evening and return the child at 6:00 in the evening on Sunday.

The second weekend of the four weekend cycle the husband shall pick up the child between 10:45 and 11:15 on Saturday morning and return the child at 6:00 in the evening on that same Saturday.

On the third weekend cycle of the four weekend cycle the husband shall pick up the children between 10:45 and 11:15 in the morning on Sunday and shall return the child at 6:00 in the evening on the same Sunday.

On the fourth weekend of the four weekend cycle the husband shall have no visitation.

Because on the fourth weekend of the four weekend cycled the husband will have no visitation, he shall have the option of Monday following the fourth weekend cycled as another weeknight visitation to pick up the child between 4:30 and 5:15 in the afternoon and return the child after dinner at 8:00 in the evening. If the husband desires to exercise such additional weeknight right of visitation, he shall give to the wife at least 24 hours advance notice.

The birthdays of the child shall be alternated between the parties. On the child's next birthday he shall spend the day with the wife.

Notwithstanding that which is set forth above the child shall be with the wife for Halloween.

The following holidays shall be alternated between the parties:

Rosh Hoshanah

Yom Kippur

Thanksgiving

The winter school break (For the current winter school break same shall be governed by the terms of the stipulation between the parties and the order of November 18, 1987, approving same.)

190

Spring school vacation to be equally divided between the parties with the first one-half with the husband, the second one-half with the wife, except the first night Seder of Passover shall always be spent with the wife.

Memorial Day

July 4th

Labor Day

The wife shall have the right to have the following visitation with ALISON:

Thursday night from 7:00 to 7:30 until 10:30 P.M.

The second and fourth Sundays from 6:00 P.M. until 10:00 P.M.

The wife shall enjoy the same holidays with ALISON as when she has MAX as is set forth for her alternating periods with MAX or as specifically set forth, such as for the first night of Seder of Passover.

Each party shall have the children with them for one-half of the summer and, if they attend summer camp as has been their practice, then one-half of the summer that they are not attending summer camp. If the parties cannot agree or work it out between them, then the summer following the entry hereof, the wife shall have the visitation the first half and thereafter the summer with the children shall be alternated between the parties thereafter.

Notwithstanding the above the children shall be with the father on Father's Day and on the Father's birthday and with the mother on Mother's Day and the Mother's birthday.

The parties may vary the schedule as they shall mutually agree and they shall endeavor to accommodate the schedule and needs of each other and of the children.

Both parties shall exercise, in the utmost of good faith, his and her best efforts at all times to encourage and foster the maximum relations of love and affection between each of the minor children and his mother and father. Neither party shall in any way impede, obstruct nor interfere with the exercise by the other of his or her right to companionship with the minor children, and neither of them at any time shall in any manner disparage nor criticize the other parent, nor allow any other to do so, to or in the presence of either of the minor children.

When the children, or either of them, are with the other parent, that parent whom the children are not with, shall have open, reasonable right to telephonic communication with that child or children, at all

times. The party with whom the child or children are with shall advise the other of the telephone number where the child or children may be reached.

Each of the parties shall keep the other informed at all times of the whereabouts of the minor children when they are with either of the parties or with others.

If either party has knowledge of any illness or accident or other circumstances seriously affecting the children's health and general welfare, the husband or wife, as the case may be, will promptly notify the other of such circumstances and the party who is notified shall have immediate access to the child notwithstanding where the child may be.

3. The husband, during his lifetime, shall pay to the wife the monthly sum of $1,200.00, for support and maintenance of Max David, to be paid $600.00 on the first day of each month and $600.00 on the fifteenth day of the month, until the child reaches the age of 18 years, marries, dies, changes his primary physical residence from that of the wife to the husband, or becomes otherwise self-supporting. In making this award, the Court has taken into consideration that the parties' daughter resides with the husband, who shall be her sole support, the needs of Max David and the husband's ability to pay. The wife shall not be required to contribute to the support of Alison Maud.

4. The husband shall maintain hospitalization and dental (if he presently has such) insurance under which the children shall be covered for so long as he is responsible for their support. He shall pay all medical bills not covered by this insurance which are incurred by or on behalf of Max David. There is presently no competent evidence before the Court that Max David is in need of psychiatric or psychological counseling. Accordingly, the husband shall not be required to pay bills incurred by the wife from any psychiatrist or psychologist to whom she takes Max David without further proof to the Court of such need.

The husband shall cooperate with the wife as to all medical claims that she makes or has made on all medical insurance coverage for herself or for Max and as to those that are or have been for reimbursement, if reimbursed to the husband, the husband shall promptly pay all of the same over to the wife that he has secured after the filing of the Petition for Dissolution of Marriage or which may hereafter be received.

5. In March, 1987, the wife received the sum of $56,406.83 as the proceeds from the sale of the marital home, pursuant to a written

agreement with the husband, dated January 23, 1987. The wife was represented by counsel in the negotiations and execution of that agreement. The parties further agreed that the husband's one half share of these proceeds would be credited in any award of lump sum alimony. Accordingly, the Court finds that the wife is entitled to lump sum alimony in an amount equal to the one half share of the proceeds from the sale of the marital home to which the husband would have been entitled had he not agreed to give these funds to the wife.

6. In making its determination whether the wife is entitled to rehabilitative and/or permanent periodic alimony and, if so, in what amounts, the Court has considered the wife's needs, her ability to presently contribute towards those needs and the husband's present ability to pay. The court has further taken into consideration the parties' lifestyle over the past three years and the manner which the husband utilized to financially maintain that lifestyle. For the majority of this marriage, the parties lived within the salary earned by the husband. The husband has no source of income other than his professional practice. In 1985, the husband, who is a practicing personal injury attorney, was successful in two cases which produced fees for him in the approximate amounts of $150,000 and $163,000 respectively. This instant influx of income intoxicated these individuals into a piranha frenzy of extravagant expenditures. They spent money on gifts for each other, traveling, jewelry and other luxuries in amounts which exceeded the husband's normal income. In order to keep pace with the newly acquired spending habits of both parties, the husband borrowed continuously from lines of credit he had established with banks based on the expectancy of future receipt of the two large fees. In 1984, the wife began a business known as Alimax, Inc. for the purpose of buying and selling mailing lists. The business last for approximately one and one half years and earned in excess of $32,000 in 1985, the majority of which the wife spent on personal pleasures. The wife does have the ability, or in the future will have such ability to become gainfully employed and is therefore not entitled to an award of permanent periodic alimony. The court recognizes that the wife is in need of support for a reasonable period of time in order to enable her to become properly educated and trained to be gainfully employed. The Court finds that a reasonable period of time for the wife to find gainful employment is five (5) years. In arriving at a reasonable amount, the Court has taken into account the wife's needs and the husband's ability to pay and to borrow. There is no doubt that both parties live over their heads and, with little effort, can curtail their spending. The award herein is more attuned to their reasonable needs and the husband's

reasonable abilities, including a reasonable continuation of deficit spending. In determining that ability, the Court has considered and weighed the testimony of the husband's accountant, Lewis Freeman, and the husband as well as the husband's present lifestyle (after the separation) at the posh Grove Isle condominium. The Court awards during the husband's lifetime to the wife as rehabilitative, taxable alimony the sum of $3,000 a month payable $1500 on the first and 15th day of each month starting January 1, 1988, and continuing for sixty (60) months thereafter or until the wife dies or remarries, whichever shall first occur.

7. The husband shall forthwith make current all arrearages in temporary alimony; such amounts as have accrued to the date hereof shall survive this Final Judgment and shall continue to be the obligation of the husband.

8. All of the payments hereunder for rehabilitative alimony or child support or both shall be made through the Central Depository of this Court and the husband shall bear the expenses associated with such procedure. Payments shall be made payable to the Clerk of the Circuit Court and forwarded to:

Central Depository

15th Floor

140 West Flagler Street

Miami, Florida 33130

Payments shall be made by cash, check or money order. The case number shall be included with each payment.

9. The husband shall continue to maintain all life insurance policies under which his life is presently insured, if any, naming the children as equal irrevocable beneficiaries. He shall keep this insurance in force until he is no longer responsible for payment of child support.

10. The husband shall pay all debts jointly incurred by the parties except the Sears bill incurred by the wife when shall installed an alarm system in the marital home and the $3,325.99 American Express bill incurred as a result of the wife making charges in January, 1987—after an argument with the husband, and without the husband's consent or knowledge. The merchandise purchased through these charges was to be returned by the wife pursuant to the terms of the January 23, 1987 written agreement. Having failed to return the merchandise, the debt should be the wife's. Except as otherwise provided in this Judgment, each of the parties shall pay any debt incurred by that party.

194

11. In determining an equitable distribution of the marital assets, the Court has considered the parties' respective assets and liabilities. The wife has a $10,000.00 Certificate of Deposit and approximately $4,000.00 in cash on hand and security deposits of her rented home. She has her jewelry which she has valued at over $7,000 and a Volvo automobile estimated by her to be worth $8,000. She has the majority of the furniture acquired by the parties during the marriage, including a $14,000 couch. Although she lists over $24,000 in liabilities, in reality her debts are considerably less. It was her testimony that the loan from Philip Dresden, in the sum of $12,000 and the debt to Donnelly Marketing ($3,102.30) were debts of her corporation, Alimax, Inc. This reduces the wife's debts to approximately $8,800.00. The husband has assets available to him in the approximately sum of $17,000. He also has cash held in trust for him in the amount of $20,000. Of his assets, only $10,000, consisting of stocks, is liquid. His total liabilities now exceed $125,000.00. Based upon the foregoing, there should be no distribution of cash or capital assets from one party to the other.

However, there are various items of personalty which should be distributed. The wife is awarded all of the furniture, furnishings, art work and other items of personalty presently located in her home with the exception of the following items which she shall forthwith give over to the husband who shall be the owner thereof:

A. The Kloss wide screen television with projector and equipment which was given by the wife to the husband in exchange for gold Rolex watch given by the husband to the wife.[3]

B. The husband's desk and chair, law school books, high school yearbook, record albums, sports video tapes, the John Fraser skeleton, all of his sister's artwork, which items were either owned by him prior to the marriage or given to him as gifts during the marriage.

C. One half of all other video tapes, the framed picture of Tyrone Power and Hedy Lamar, the portrait of Alison and Max, one half of all pictures of the children, framed and unframed.

D. The husband's coin, stamp, eraser and Playboy magazine collections.

E. As to the Bat Mitzvah tape, if the husband desires same, the wife shall have a copy produced at husband's expense, and deliver the copy to the husband upon his payment therefor.

---

[3] Fact that Rolex lost or stolen is insufficient basis for wife's refusal to turn TV over to husband. Though parties in dissolution proceedings often regress to infantile behavior, "Indian Givers" is not a recognized theory in Law or Equity.

F. As to the contents of Alison's room in the wife's home, they shall remain in the wife's home for one year from now. If, at the end of that time Alison is still residing with the husband, said contents will be given over to Alison. This shall not restrict the wife's right to give over to Alison all or any portion thereof at any time earlier as she may desire.

12. The distribution ordered herein leaves the wife with the majority of the assets acquired during the marriage (other than the husband's legal practice) and the husband responsible for payment of debts acquired primarily to support their lavish lifestyle. The Court recognizes the disparity but has based this distribution upon the relative earning abilities of the parties.

13. The husband shall comply with this agreement to make all arrangements necessary to initiate proceedings to obtain a "Get" within a reasonable time from the entry of this Final Judgment.

14. The Court reserves jurisdiction for the purposes of:

A) Enforcing the provisions hereof and to require the parties to carry out the intent and purpose of the provisions of this Final Judgment.

B) Enforcing all prior temporary awards of alimony and child support.

C) Enforcing, extending or modifying the rehabilitative alimony award to the Wife.

D) Enforcing or modifying the child support award and the provisions dealing with parental responsibility, primary physical residence, and visitation with the minor children.

E) Determining the entitlement and, if so, the amount of attorney's fees, suit money and taxable costs for wife's counsel.

DONE and ORDERED in Miami, Dade County, Florida, this 10th day of December, 1987.